Filed 5/12/26  P. v. Rodriguez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL WILLIAMS RODRIGUEZ,<br><br>    Defendant and Appellant. | F088951<br><br>(Super. Ct. No. CRF74249)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Tuolumne County. Kevin M. Seibert, Judge.

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Snauffer, Acting P. J., DeSantos, J. and Harrell, J.

## INTRODUCTION

Appellant and defendant Michael Williams Rodriguez (defendant) was convicted after a jury trial of grossly negligent discharge of a firearm that could cause injury or death (Pen. Code,[1] § 246.3, subd. (a)); 10 counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)), and other offenses. He was sentenced to the second strike term of 12 years eight months in prison.

On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant did not file a supplemental brief on his own behalf. We affirm.

## FACTS

On March 11, 2024, John O. and 10 members of his family, including his grandchildren, arrived at their rented AirBNB cabin (the cabin) in the Cold Springs area of Tuolumne County. The cabin was located on a road in a wooded area. There was a lot of snow on the ground. The cabin's owner had installed motion-activated security cameras on the outside of the cabin. John O. had never rented the cabin before.

Defendant lived in a residence that was on the same road and directly next door to the cabin.

Sometime after 7:00 p.m., a grandchild told John O. that someone was shooting outside and the child had already heard two gunshots. As John O. was talking with the child, he heard two gunshots that sounded like they were fired near the cabin. John O. went to the cabin's back patio, walked around the corner of the cabin to look toward the front, and saw a man walking around. John O. could not see if the man was holding a gun. John O. returned inside the cabin, and heard a man yelling and three or four more gunshots.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

John O. was concerned for his family's safety. He shut off all the interior lights, closed the blinds, and instructed everyone to "lockdown" in one of the rooms. As he did so, John O. again heard the same man's voice yelling and swearing outside, and four or five additional gunshots. Another family member called 911, and placed a second call to check on when the deputies were coming.

While John O. and his family were hiding and waiting for the sheriff's department, someone started tapping at the cabin's door. John O. did not open the door or look outside, but spoke through the closed door and asked who was there. A man asked, "Paul, are you in there?" John O. replied there was no one named Paul there, and they were a family on vacation. The man said, " 'Fucking, Paul. You're lying to me. Fucking come out here.' " The man also said, " 'Come out here. I'm going to kick your ass.' " John O. again said he was there with his family and there was no one named Paul. The man replied, " 'If you're fucking lying to me, I'm going to come back and kill you.' " John O. heard the sound of someone walking away, and two more gunshots were fired.

John O. testified by this time, his family was lying on the floor and crawling to avoid being shot. Everyone was afraid, and the children were crying and asking the adults if someone was trying to kill them.

***Deputies' Contact With Defendant***

At approximately 7:23 p.m., deputies from the Tuolumne County Sheriff's Department, and one officer from Sonora Police Department, received a dispatch about a man shouting and firing gunshots at a particular address. The deputies were responding from Sonora, and they arrived at the cabin at 8:18 p.m.

The deputies were advised by the dispatcher that defendant lived next door and was a convicted felon who was prohibited from possessing firearms.[2]

---

[2]     The trial court took judicial notice that defendant had three felony convictions in 2015.

3.

When the deputies arrived, they walked around the outside of defendant's home and the adjacent cabin. They saw a total of 41 spent nine-millimeter shell casings in the following locations: (1) on the road in front of defendant's home, (2) the road in front of the cabin, (3) on defendant's driveway, (4) on the snow-covered ground between defendant's driveway and the cabin, (5) in the snowbank between defendant's home and the cabin, and (6) on the ground in front of the entire frontage of the cabin. There was one round of live ammunition on defendant's driveway near the garage door.

The deputies pounded on the wall near defendant's garage to determine if someone was inside the house. Defendant leaned out of a lower level door at the bottom of a staircase. Tuolumne County Sheriff's Sergeant Matthew Stuart testified he "coax[ed]" defendant to come outside. The stairs were wet and covered with snow, and it took defendant awhile to walk up the stairs.

Defendant reached the ground-level road and spoke with the deputies. He was wearing a black "Michael Jordan" sweatshirt. Sergeant Stuart smelled alcohol on defendant, his speech was slurred, he had an unsteady stance, and he had a hard time communicating.

Defendant told Sergeant Stuart that he had been sleeping for two hours, he denied firing a weapon, and he had not heard any gunshots. Stuart pointed to the bullet casings in defendant's driveway, and defendant said he did not know how they got there.

Defendant was arrested and taken into custody for being a felon in possession of live ammunition. Defendant said he had lived there for 27 years, and he had a "wolf—a wolf dog in the house."

Sergeant Stuart advised defendant that he was going to jail, and asked if he wanted anything from his house, such as his phone or shoes, or for the deputies to lock up the house. Defendant said to lock up his house and Stuart took defendant's keys. Stuart and another deputy walked down the same staircase that defendant had used, and saw the lower level door was open.

Sergeant Stuart stood outside the doorway and reached for the open doorknob to lock it. The lights were on inside the house, and Stuart saw a Taurus PT-92 nine-millimeter pistol that was a few feet inside the doorway. The pistol was on top of a holster that was placed on a cutting board. Stuart retrieved and secured the pistol, which contained an empty magazine. The pistol used nine-millimeter ammunition similar to the casings that were found outside. Stuart did not see or hear a dog in the house.

J.O. testified that as the investigation was being conducted, a deputy advised him that everything would be okay for the rest of the night, but defendant could post bail and return. J.O. and his family decided to check out of the cabin and head to a nearest hotel.

*Search Warrant*

On March 12, 2024, Tuolumne County Sheriff's Deputy Isreal Speer and other deputies executed a search warrant on defendant's property.

In addition to the pistol that Sergeant Stuart saw through the open door, the following firearms were found on defendant's property, some of which were loaded: a Bohmische Model 27 pistol; a J.C. Higgins 41 rifle; a Browning A5 12-gauge shotgun; a Savage Arms 99C rifle; an Intratec TEC-22 pistol; a Mauser M48 rifle; a Savage 24S-E rifle; an Ithaca 37 shotgun; an Intratec TEC 9 pistol; and part of a Remington 700 Rifle.

A device was attached to the TEC-22 pistol that appeared to be a suppressor.

There was one round of live rifle ammunition in defendant's vehicle. The deputies found loose ammunition, boxes of ammunition, and loaded and empty magazines throughout defendant's house, including live .22-caliber ammunition and a stack of live nine-millimeter ammunition. They also found spent 12-gauge shotgun shells.

*Security Videos*

The cabin's owner provided the deputies with video footage from the motion-activated security cameras installed on the property, that showed a man walking around with a firearm. Sonora Police Officer Shouse testified that he reviewed the videos and

5.

recognized defendant as the man with the firearm, and noted he was wearing the same "Michael Jordan" sweatshirt in the video as when he was arrested.

The video showed that between 7:00 p.m. and 8:00 p.m., defendant walked away from the cabin and toward his residence, and he discharged a firearm into the ground. The video also showed defendant extend his arm and fire several rounds into the snowbank between his residence and the cabin. While watching the videos, Shouse could hear the sound of a handgun slide being racked before the weapon was fired.

### Defendant's Post-arrest Statement

After the search, Officer Shouse met with defendant and advised him of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. In response to questions, defendant said he remembered yelling while he was in his driveway but denied firing a weapon. Shouse advised defendant that the security video showed him firing a weapon. Defendant then admitted that he fired a weapon, but said he stood in his driveway and fired "into the hill" across the street from his own residence, and not at the cabin that was next door. Defendant said he had owned the firearms for 10 years. Shouse asked about the attachment to the TEC-22, and defendant said it was a "tester silencer" that he built himself, and it would muffle the sound of the firearm being discharged.

### Defendant's Trial Testimony

At trial, defendant testified that he had lived at his home for 27 years, it was in the high country, and there was a lot of wildlife in the area. Defendant owned a "wolf-dog" named Queen that was "about 95 percent pure wolf," and it weighed about 160 pounds. Defendant had constant problems with coyotes trying to go after his dog. He kept the dog inside as a precaution.

Defendant testified that on the night of the incident, he heard coyotes yelping outside, which they regularly did to draw a domestic animal outside so they could attack it. Defendant admitted the cabin's security videos showed that he was firing his gun, and

6.

testified he did so to scare the coyotes away from his dog. Defendant said he fired into a "solid snow berm" across the street from his home and did not fire at the cabin next door.

Defendant testified he drank a beer and a couple of shots that night. He did not remember what he told Sergeant Stuart, and thought he explained that he fired his gun to scare away the coyotes. Defendant testified he was not intoxicated when he was arrested, but admitted he was "quite" intoxicated when he arrived at the jail.

Defendant testified the guns found in his house belonged to him, he had them for many years, he previously used them for hunting, and four weapons were inoperable.

Defendant admitted that he was convicted of three felonies in 2015, for negligent discharge of a firearm (§ 246.3), felon in possession of a firearm (§ 29800) and felon in possession of ammunition (§ 30305).

### Rebuttal

Officer Shouse testified he was present when Sergeant Stuart spoke to defendant at the scene. Defendant denied he fired a weapon, claimed he did not have any weapons, and never mentioned anything about trying to protect his dog from coyotes.

Shouse testified he was at the scene for over one hour during the investigation and never heard any coyote sounds. When he watched the cabin's outdoor security videos, they showed defendant standing outside his residence, extending his arm, and firing several rounds toward the cabin. Defendant was not firing across the street. The flashes from the firearm's muzzle were visible on the video, and the shots were consistent with being fired from a semiautomatic handgun. There were no audible coyote sounds on the video, and defendant did not mention coyotes in his prior statements.

Shouse testified that during defendant's post-arrest interview, he initially said he previously fired weapons on other occasions, but never said anything about coyotes.

### PROCEDURAL BACKGROUND

On March 26, 2024, an information was filed in the Tuolumne County Superior Court that charged defendant with grossly negligent discharge of a firearm that could

7.

cause injury or death (§ 246.3, subd. (a)/count 1); possession of firearms by a felon, based on 11 specific firearms found on his property as listed above (§ 29800, subd. (a)(1)/counts 2-12); possession of ammunition by a prohibited person (§ 30305, subd. (a)(1)/count 13); and possession of a silencer (§ 33410/count 14).

It was further alleged that defendant had one prior strike conviction (§§ 667, subds. (b)-(j), 1170.12, subd. (b)), five prior felony convictions (§ 1203, subd. (e)(4)), and five aggravating factors (Cal. Rules of Court,[3] rule 4.421).

Prior to the start of defendant's trial, the prosecution dismissed count 7, felon in possession of a firearm, the Remington 700 Rifle, because it only consisted of part of a rifle that was not attached to a stock.

On September 3, 2024, defendant's jury trial began.

On September 4, 2024, the jury found defendant guilty of the remaining counts 1-6 and 8-14.

On September 9, 2024, the court conducted the bifurcated trial and found defendant had one prior strike conviction, and found true four of the five aggravating factors:  the crime involved great violence (rule 4.421(a)(1)); the victim was vulnerable (rule(a)(3)); defendant was a danger to society (rule (b)(1)), and his crimes were increasing in seriousness (rule (b)(2)).

On October 17, 2024, the trial court denied defendant's request to dismiss the prior strike conviction, and imposed an aggregate term of 12 years eight months based on the upper term of three years for count 1, doubled to six years as the second strike term; plus consecutive terms of eight months (one-third the midterm) doubled to 16 months each for counts 2, 3, 4, 13, and 14.

On November 18, 2024, defendant filed a timely notice of appeal.

---

[3]     All further rule references are to the California Rules of Court.

## DISCUSSION

As noted above, appellate counsel filed a *Wende* brief with this court. The brief also included counsel's declaration that defendant was advised he could file his own brief with this court. On February 13, 2026, this court advised defendant by letter that he could file a supplemental letter or brief raising any arguable issues. Defendant did not do so.

After independent review of the record, we find no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.